1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE M. TRINIDAD,<br><br>                    Petitioner,<br><br>          v.<br><br>STU SHERMAN,<br><br>                    Respondent. | Case No. 1:15-cv-00436-DAD-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Jorge M. Trinidad is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition for writ of habeas corpus, Petitioner raises the following claims for relief: (1) ineffective assistance of counsel; (2) ineffective assistance of counsel during the plea process; (3) the state court's failure to appoint counsel to investigate Petitioner's ineffective assistance of counsel claim in his state habeas proceedings; and (4) that Petitioner acted in self-defense.

For the reasons discussed herein, the Court recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On May 6, 2011, Petitioner was convicted by a jury in the Fresno County Superior Court of first-degree murder (count 1) and second-degree robbery (count 2). The jury found true the

special allegation that Petitioner personally used a knife during the commission of the crime. Petitioner was sentenced to a term of twenty-five years to life on count 1, plus a one-year enhancement on the special allegation. The sentence on count 2 was stayed. People v. Trinidad, No. F062786, 2013 WL 2279434, at *1 (Cal. Ct. App. May 22, 2013). On May 22, 2013, the California Court of Appeal, Fifth Appellate District, affirmed the judgment. Id. at *8. The California Supreme Court denied Petitioner's petition for review on August 14, 2013. (LDs[1] 7, 8).

Subsequently, Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court.[2] (LD 9). The petition was denied on October 18, 2013. (LD 10). Petitioner then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, which denied the petition without prejudice on February 6, 2014. (LDs 11, 12). Petitioner filed another habeas petition in the California Court of Appeal, Fifth Appellate District, which summarily denied the petition on June 17, 2014. (LDs 13, 14). Petitioner filed a habeas petition in the California Supreme Court, which summarily denied the petition on February 18, 2015. (LDs 15, 16).

On March 20, 2015, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer to the petition. (ECF No. 20).

## II.

## STATEMENT OF FACTS[3]

On October 14, 2010, sometime around 6:00 a.m., Dolores dropped off her 33-year-old cousin, Marcella, near a gas station on the northwest corner of Winery and Kings Canyon. Marcella was there to engage in prostitution. She walked north toward the Big Lots store on the same corner. About 20 to 25 minutes later, Dolores received a call from Marcella, telling her to come back and pick her up near the Big Lots store. Dolores heard rustling sounds and thought Marcella sounded out of breath.

When Dolores arrived, she saw Marcella on the sidewalk on the west side of Winery, near the Big Lots store. Dolores realized Marcella was having difficulty breathing and she saw blood on the left side of her abdomen. Dolores got help from passers-by who called the police.

---

[1] "LD" refers to the documents lodged by Respondent on October 22, 2015. (ECF No. 21).
[2] The California Court of Appeal expanded appellate counsel's appointment to include ten hours to prepare and file a habeas petition in the Fresno County Superior Court on the issue of alleged ineffective assistance of trial counsel during the plea process. (ECF No. 1 at 316).
[3] The Court relies on the California Court of Appeal's May 22, 2013 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

At about 6:30 a.m., Officers Swanson and Scott arrived and found Marcella lying on the sidewalk next to the Big Lots store on the west side of Winery. She was covered in blood and there was blood on the sidewalk underneath her. Another Hispanic female was standing over her yelling. Officer Swanson saw five to 10 stab wounds on Marcella, and he attempted to stop the bleeding from her chest wounds. Marcella was gurgling and gasping for air, unable to say anything to the officers. An ambulance arrived three to five minutes later. Marcella had surgery at the hospital, but she did not survive.

Detective Cervantes spoke to Dolores at the scene. She said Marcella was carrying a black fake leather purse and a black Page Plus cell phone. When officers went to the hospital, they learned that the purse and phone did not arrive with Marcella.

Detective Valles arrived on the scene at 7:45 a.m. He observed a bloody jacket on the sidewalk where Marcella had lain. A blood trail led from the jacket diagonally across the street, ending at a black T-shirt that was in the road near the curb on the east side of Winery. The neck of the black T-shirt had been stretched out.

Detective Serrano determined that Marcella's cell phone was active. It had sent a Spanish text message after Marcella had been killed, at about 9:00 a.m., to a specific cell phone owned by a woman in Madera. Detective Serrano visited the woman and learned that her 15-year-old daughter, Doris, was the primary user of the phone. Detective Serrano went to Doris's school and spoke to her. Doris said she had received a text message in Spanish that morning from a male named George or Jorge whom she had recently met in Fresno. Doris accompanied Detective Serrano back to Fresno.

Detective Cervantes spoke to Doris at the station. He translated the Spanish text message sent from Marcella's cell phone at 9:00 a.m. as follows: "Mija [a term of endearment], what are you doing? This is George. This will be my phone until the number is disconnected."

At this point, the officers determined they would use Doris to lure defendant out. At 2:08 p.m., while the officers were discussing the plan with Doris, she happened to receive a call from defendant. Detective Cervantes was able to record the call with his digital recorder. According to the plan, Doris asked defendant where he was and said they could meet later. Defendant said he was in the area of Kings Canyon and Dearing, near the major cross streets of Kings Canyon and Chestnut. Doris told him she was going to have her oldest sister drive her to the area so they could meet. Defendant said he would prefer for her to pick him up on a side street because he had been involved in an altercation and the police were looking for him. Then he apologized and said he would have to meet her later; he had to go to his stepbrother's because the police were going to get him. He explained that he had gotten into a fight with some individuals that morning at an apartment complex near Kings Canyon and Winery, which he called "[T]he Wineries," and that he had stabbed a female. He said the police had been investigating the case since about 6:00 a.m., and he did not want to go out on the street. He said the police were going to kill him.

At 4:26 p.m., defendant called again to arrange a meeting with Doris. He said they would meet at a bus stop near Kings Canyon and Chestnut. Then he said he would wait in the parking stalls because he was afraid the police would be there.

At 4:34 p.m., defendant called Doris a third time. By now, Doris was in the backseat of an undercover vehicle with Detective Cervantes. Defendant told Doris that he was walking with a friend to Kings Canyon and Chestnut. She asked him what he was wearing. She told him she was there, but she had passed Chestnut and was coming around. He giggled, then stressed to her that she should hurry because he did not want to be out on the street for long. He told her he would to [*sic*] be in front of the Halloween Superstore on the northwest corner of Kings Canyon and Chestnut. At this point, Detective Cervantes was observing defendant and his friend. Detective Cervantes informed undercover officers in the area. They exited their vehicles wearing tactical vests and badges, approached defendant, ordered him to drop the cell phone he was holding in his right hand and lie on the ground. The cell phone was a black Page Plus phone. The officers conducted a pat-down search of defendant and found a folding switchblade knife in a black nylon sheath and another cell phone, which was later found to be inactive other than as a musical device. They arrested defendant.

Detective Cervantes noticed that a group of people had congregated nearby to watch the officers arresting defendant. Detective Cervantes approached and spoke to a 16-year-old boy who said defendant came to his apartment on Sierra Vista at about 7:00 a.m. that morning. Defendant told him he had been involved in a fight and had stabbed a person. Defendant had some lottery tickets with him. Defendant cleaned a bloody knife and changed into clean clothes. Detective Cervantes showed the boy the switchblade knife taken from defendant and the boy identified it as the bloody knife defendant had cleaned that morning.

Detective Cervantes also spoke to a 16-year-old girl who said she knew defendant. She said he came to her apartment on Dearing that morning at about 9:00 a.m. She saw him using a Page Plus cell phone and sending text messages with it. She said defendant told her he had been involved in a fight at about 6:00 a.m. at The Wineries apartment complex. He said a female was trying to "get at him" and she took his wallet.

At the station, Detective Cervantes interviewed defendant's 17-year-old friend who was with defendant when he was arrested. The friend said he saw defendant that afternoon at an apartment on Dearing. Defendant told him he had been involved in a fight. The friend saw defendant sending text messages on the black Page Plus cell phone before he was arrested. The friend said defendant was 17 years old.

Another person, also from an apartment on Dearing, told officers she saw defendant with two cell phones that day. Defendant told her he had purchased the phones, but he could not provide the name of the cell phone service provider.

Detectives interviewed defendant at the station. He initially identified himself as 19-year-old Jesus Aburto. After he was read his *Miranda* rights, he agreed to speak to the officers. He said he was drinking with some friends at an apartment complex on Winery, just north of the crime scene. Around 6:00 a.m., he left and was walking south on Winery toward the gas station when he met Marcella. He asked her for a lighter and she said she did not have one. She asked him, "Do you want to do some business?" Defendant took this to mean sexual intercourse. They agreed he would pay her $20 for sex. He paid her and they walked into an alley perpendicular to Winery. Defendant lay down near the trash can and Marcella faced away from him, but she got up and left without doing what they had agreed upon. He told the officers they would find a condom behind a U-shaped cinderblock wall dumpster enclosure at the east end of the alley.

Defendant explained that since no sexual act had occurred, he tried to get his $20 back from Marcella. He took his knife out and told her, "Give me back my fucking money." She would not give him the money, so he grabbed the cell phone she was talking on and he ran back toward the apartments. As he went into the apartment complex, he realized he did not have his wallet. He came back onto the street and saw Marcella. She ran when she saw him, but he caught her. She grabbed him and he did not know what to do, so he grabbed her purse and took off running. Defendant did not mention a stabbing.

The detectives told defendant they knew he was omitting certain things and he needed to provide more details. He then explained that after he realized his wallet was gone, he came back to recover it. He realized it was in Marcella's purse. When he caught up to her, they struggled over the purse as he tried to remove it from her person. They exchanged blows. Marcella pulled his shirt off. She punched him, and he punched her a few times and pushed her to the ground. He had his knife out and he told her he wanted his wallet back. She had the purse on her right side and she would not let go of it, so he got on top of her and stabbed her two to five times on the left side of her torso. Defendant demonstrated this for the detectives with a few "very, very slight," slow, and "nonchalant" stabbing motions.

After stabbing her, he took the purse and ran north through an apartment complex. On his way, an unknown male looked as though he was going to try to swing at him, so he punched the male in the face. Defendant jumped a fence and then went through the purse to remove the contents. He took his wallet and some lottery tickets from the purse. He left the purse and the remaining contents in the back of the apartment complex. He still had Marcella's cell phone. Defendant told the detectives he knew what he did was wrong, but it was her fault, not his.

Based on defendant's information, officers went to the alley behind the strip mall. At the end of the alley, behind a U-shaped cinderblock wall, they found an unused condom and a condom wrapper in the location defendant had specified.

Officers also went to the location defendant said he left Marcella's purse. They found the purse with the contents—including makeup, a compact, some condoms, a child's pacifier, and identification cards—strewn about.

Defendant took officers to a backpack hidden under a car at the Sierra Vista apartment complex (where he had changed his clothes that morning). The backpack contained used lottery tickets.

Defendant's alien registration card with his picture showed him to be 21 years old. Elementary school transcripts, however, showed him to be only 15 years old. At this point, Detective Cervantes did not know if defendant was 15, 17, 19, or 21 years old. In a second interview, Detective Cervantes inquired again. This time, defendant gave his true name and birth date, and explained that he had the registration card because he needed to be a certain age to work. Defendant weighed about 150 pounds and was the appropriate size for a 15-year-old.

Dr. Chambliss, a pathologist, conducted the autopsy on Marcella's body on October 15, 2010. Marcella weighed 156 pounds, and her system contained some methamphetamine, but no alcohol. The cause of her death was a stab wound to the chest that penetrated the heart's left ventricle and caused her to bleed to death within minutes. Another chest stab wound was directed downward, penetrating the spleen. She suffered five other wounds to the left chest area that did not

penetrate her body cavity. In addition, she suffered wounds under her arm, on the back of her right forearm (completely penetrating her arm), on the front of her right forearm, on her upper left arm, and on her lower left leg. In total, Marcella suffered 16 stab and puncture wounds.

According to Dr. Chambliss, the knife found on defendant could have created the type of wounds on Marcella's body.

In addition to the stab wounds, Dr. Chambliss found a blunt trauma injury, an internal bruise, on the left side of Marcella's scalp, just above her forehead. Dr. Chambliss saw no injuries, including defensive wounds, on Marcella's hands.
Dr. Chambliss examined Marcella's jacket and sweatpants and determined that the damage to the clothing was consistent with her stab wounds.

On cross-examination, Dr. Chambliss explained that Marcella would have been able to engage in activity after being wounded until her blood pressure dropped too low and/or the blood accumulated around her heart and stopped its functioning. The methamphetamine in her system could have made her more excitable and aggressive, and possibly stronger. It also could have raised her blood pressure. Dr. Chambliss agreed that her leg wounds could have occurred while her legs were raised, and the wound under her arm could have occurred if she lifted her arm to attack.

Trinidad, 2013 WL 2279434, at *1–4 (footnotes omitted).

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

///

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed de novo. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility

1  fairminded jurists could disagree that the state court's decision conflicts with [the Supreme

2  Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state

3  court's ruling on the claim being presented in federal court was so lacking in justification that

4  there was an error well understood and comprehended in existing law beyond any possibility for

5  fairminded disagreement." Id. at 103.

6      If the Court determines that the state court decision was "contrary to, or involved an

7  unreasonable application of, clearly established Federal law," and the error is not structural,

8  habeas relief is nonetheless unavailable unless it is established that the error "had substantial and

9  injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)

10 (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776

11 (1946)).

12     The AEDPA requires considerable deference to the state courts. The Court looks to the

13 last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain,

14 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v.

15 Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state

16 court and the state court has denied relief, it may be presumed that the state court adjudicated the

17 claim on the merits in the absence of any indication or state-law procedural principles to the

18 contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but

19 provides no reasoning to support its conclusion, a federal habeas court independently reviews the

20 record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel,

21 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not de novo review of

22 the constitutional issue, but rather, the only method by which we can determine whether a silent

23 state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th

24 Cir. 2003). The federal court must review the state court record and "must determine what

25 arguments or theories . . . could have supported, the state court's decision; and then it must ask

26 whether it is possible fairminded jurists could disagree that those arguments or theories are

27 inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at

28 102.

**IV.**

**REVIEW OF CLAIMS**

**A.  Ineffective Assistance of Counsel**

In his first and second claims for relief, Petitioner asserts various instances of ineffective assistance of counsel. Petitioner alleges that his trial counsel was ineffective for: (1) failing to investigate and present evidence regarding Petitioner's intoxication; (2) failing to investigate and present evidence regarding Petitioner's youth; (3) failing to contact and secure assistance from an available attorney with the Mexican Consulate; (4) failing to obtain and investigate police reports and photographs that contained favorable information; (5) failing to investigate and present evidence regarding Petitioner's size and injuries; (6) failing to identify and locate witnesses; (7) failing to further investigate the victim's intoxication; (8) failing to request a continuance; (9) failing to research and present the legal basis for defense instructions; (10) using drugs at the time of Petitioner's trial; (11) cumulative deficiencies; and (12) failing to adequately advise Petitioner during the plea process. (ECF No. 1 at 42–68). Respondent argues that the state court's adjudication was not unreasonable or contrary to Supreme Court precedent. (ECF No. 20 at 23).

Petitioner raised ineffective assistance of counsel in all of his state habeas petitions. The Fresno County Superior Court denied the claims in a reasoned decision. (ECF No. 20 at 84–93). Both the California Court of Appeal, Fifth Appellate District, and the California Supreme Court summarily denied the petitions. (LDs 14, 16). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denials and examine the decision of the Fresno County Superior Court.  See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

1.  Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). When this "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

### 2.   Failure to Investigate and Present Evidence Regarding Petitioner's Intoxication

Petitioner asserts that trial counsel was ineffective for failing to investigate and present evidence regarding Petitioner's being under the influence of alcohol and methamphetamine at the time of the offense and how that may have affected Petitioner's mental state. (ECF No. 1 at 43).

1   Respondent argues that counsel's performance was not deficient and that it was not unreasonable

2   for the state court to find no prejudice resulted. (ECF No. 20 at 25).

3        In denying Petitioner's ineffective assistance claim based on trial counsel's failure to

4   investigate and present evidence regarding Petitioner's intoxication, the Fresno County Superior

5   Court stated:

> Petitioner alleges that his trial counsel was ineffective in twelve ways. In order to show ineffective assistance of counsel, Petitioner must allege facts showing that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) that his defense suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 690-692.)
>
> First, Petitioner alleges that his trial counsel did not investigate Petitioner's possible intoxication with alcohol and methamphetamine at the time of the offense and at the time of his interrogation by the police. However, Petitioner fails to demonstrate what his trial counsel would have discovered if he had investigated Petitioner's alleged alcohol and methamphetamine intoxication. While Petitioner asserts that he was drinking with his friend's brother prior to the stabbing of the victim, Petitioner does not establish that his friend's brother would have confirmed this version of events to Petitioner's trial counsel. Further, while Petitioner states that he informed his counsel that he was under the influence of methamphetamine, Petitioner does not explain how this information would have been placed into evidence. Petitioner does not state that he was willing to testify about this intoxication at trial. Therefore, Petitioner has failed to establish that he was prejudiced by his counsel's alleged failure to investigate his methamphetamine and alcohol intoxication.

19   (ECF No. 20 at 84–85). In his subsequent habeas petitions to the California Court of Appeal and

20   California Supreme Court, Petitioner declared under penalty of perjury, "I would have been

21   willing to testify about my intoxication at trial if my trial attorney had advised me that it was in

22   my best interests to testify." (LDs 13, 15; ECF No. 1 at 266). In reviewing the reasonableness of

23   the California Supreme Court's decision denying Petitioner's claim, this Court may consider

24   Petitioner's declaration while using the Fresno County Superior Court's "reasoning in

25   accordance with [the] usual practice of 'looking through' summary denials to the last reasoned

26   decision." Cannedy v. Adams, 706 F.3d 1148, 1159 n.5 (9th Cir. 2013). "Because the state court

27   did not decide whether . . . counsel was deficient, [the Court] review[s] this element of [the]

28   Strickland claim *de novo*." Porter v. McCollum, 558 U.S. 30, 39 (2009) (citing Rompilla v.

1  Beard, 545 U.S. 374, 390 (2005)).

2      In Strickland, the Supreme Court declared that "counsel has a duty to make reasonable

3  investigations or to make a reasonable decision that makes particular investigations unnecessary.

4  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for

5  reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

6  judgments." 466 U.S. at 690–91. Petitioner "must overcome the presumption that, under the

7  circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

8      In the instant case, trial counsel's decision not to investigate and present evidence

9  regarding Petitioner's intoxication could be considered sound trial strategy. At trial, defense

10 counsel emphasized Petitioner's youth and the fact that the victim had methamphetamine in her

11 system. During closing argument, defense counsel stated:

12
13
> We've got a 15-year-old kid, this 33-year-old street smart lady, who on this particular night was on drugs. . . . We're talking about someone who knows what they're doing versus a 15-year-old.

14
> . . .

15
16
17
> But we know in this case that Ms. Ramos had methamphetamine in her system. It is not a stretch by any imagination to think that the methamphetamine in her and her experience on the streets, that she used considerable force. I mean, for a 15-year-old I think it was a handful.

18 (2 RT 339, 340–41). Presenting evidence of Petitioner's alcohol and methamphetamine

19 intoxication would severely contradict the defense's trial strategy of characterizing Petitioner as

20 a naive fifteen-year-old. Moreover, presenting evidence of Petitioner's methamphetamine

21 intoxication would neutralize the defense argument that the victim used substantial force in the

22 altercation based on her methamphetamine use. Therefore, the Court finds that trial counsel was

23 not deficient. See Correll v. Stewart, 137 F.3d 1404, 1411 (9th Cir. 1998) (holding counsel was

24 not ineffective for failing to present psychiatric evidence that would have contradicted the

25 primary defense theory of misidentification). Accordingly, Petitioner is not entitled to habeas

26 relief for ineffective assistance of counsel on the ground that trial counsel failed to investigate

27 and present evidence of Petitioner's intoxication.

28 ///

3.   Failure to Investigate and Present Evidence Regarding Petitioner's Youth

Petitioner asserts that trial counsel was ineffective for failing to investigate and present evidence regarding Petitioner's youth. (ECF No. 1 at 43). Petitioner contends that the recent trend in cases decided shortly before Petitioner's trial and continuing thereafter has "recognized that juvenile offenders have reduced culpability based on their youth." (Id.). Additionally, Petitioner contends that his "youth could have provided a partial basis for finding that he was incompetent to stand trial if he did not understand the trial proceedings enough to assist counsel." (Id. at 44). Respondent argues that counsel's performance was not deficient and that the state court's decision finding no prejudice resulted from this omission was not unreasonable or contrary to Supreme Court precedent. (ECF No. 20 at 28–29).

In denying Petitioner's ineffective assistance claim based on trial counsel's failure to investigate and present evidence regarding Petitioner's youth, the Fresno County Superior Court stated:

> Petitioner alleges that his trial counsel did not properly investigate Petitioner's youth. Petitioner was 15 years old at the time he stabbed the victim 16 times. In support of his argument, Petitioner cites several cases noting that "juvenile offenders have reduced culpability based on their youth." (*Roper v. Simmons* (2005) 543 U.S. 551, 567-575; *Graham v. Florida* (2010) 560 U.S. --- [130 S.Ct. 2011, 2026-2027, 2032]; *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455, 2463-2469]; *People v. Caballero* (2012) 55 Cal.4th 262, 266-269.) However, these cases relate to sentencing issues. Here, petitioner did not receive a death sentence or a sentence of life without possibility of parole. Moreover, Petitioner fails to demonstrate that the outcome of Petitioner's trial would have been different even if Petitioner's counsel would have investigated Petitioner's youth. Thus, Petitioner has failed to establish that he was prejudiced by his counsel's failure to investigate and argue the issue of Petitioner's youth.

(ECF No. 20 at 85).

As the state court correctly noted, the cases to which Petitioner cites relate to juvenile sentencing issues rather than the ability of a juvenile defendant to form the requisite intent to be found guilty of an offense. Defense counsel repeatedly referenced Petitioner's youth throughout the trial. For example, during his opening statement that spanned only two pages of transcript, defense counsel referenced the fact that Petitioner was fifteen years old at the time of the offense

1    four times. (Aug. RT[4] 250–51). Counsel also referred to Petitioner's youth during cross-

2    examination of Detective Cervantes. (1 RT[5] 180). During closing arguments, defense counsel

3    specifically referenced Petitioner's youth in relation to his ability to form the requisite culpable

4    mental state. Defense counsel argued:

5
              Now, malice is this, a conscious disregard for life knowing,
              knowing that a person is probably going to die but I'm going to do
6             it anyways. And if you have that and you have deliberation and
              premeditation, that is—that—deliberation is carefully considering
7             the options to do it and not do it and deciding to kill.

8             And, folks, we don't have that here. There is no deliberation, by
              any stretch of it. This is all happening fast. We've got a 15-year-
9             old kid, this 33-year-old street smart lady, who on this particular
              night was on drugs. She was earning money working the way she
10            could. Which I'm not passing judgment. We're talking about
              someone who knows what they're doing versus a 15-year-old. It
11            happened fast. I don't think we have a lot of—there is not a lot of
              opportunity for deliberation or premeditation. And if there is no
12            premeditation, then anything else is either going to be second
              degree murder or below. And for second degree you have to have
13            that conscious disregard. And I don't see that.

14   (2 RT 339–40). Further, in the rebuttal closing, the prosecutor acknowledged that "[w]hat was

15   fully expected and I heard multiple times was the fact that the defendant is a 15-year-old, we

16   have a 15-year-old, young people, young boy. That is the type of sympathetic argument that you

17   are not—you should not be swayed by at all." (2 RT 348). Based on the foregoing, trial counsel

18   was not deficient, and it was not objectively unreasonable for the state court to conclude that

19   counsel's alleged failure to investigate and present evidence of Petitioner's youth did not

20   prejudice the defense.

21        Additionally, Petitioner argues that his "youth could have provided a partial basis for

22   finding that he was incompetent to stand trial if he did not understand the trial proceedings

23   enough to assist counsel." (ECF No. 1 at 44). Because the state court did not provide any

24   reasoning in rejecting this argument, the Court must review the state court record and "must

25   determine what arguments or theories . . . could have supported, the state court's decision; and

26   then it must ask whether it is possible fairminded jurists could disagree that those arguments or

27
─────────────────────────
[4] "Aug. RT" refers to the Reporter's Transcript of Jury Selection and Opening Statements lodged by Respondent on
28   October 22, 2015. (ECF No. 21).
     [5] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on October 22, 2015. (ECF No. 21).

theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

"[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). See also Drope v. Missouri, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial").

In the instant case, trial counsel informed appellate counsel that Petitioner "may not have understood the legal proceedings." (ECF No. 1 at 117). In a declaration, Petitioner stated, "I cannot read or write English very well and I did not understand much of my legal proceedings during my trial in this case." (Id. at 259). Petitioner did not declare that he had trouble communicating in English or understanding English at the time of his trial. Neither Petitioner nor trial counsel asserted that Petitioner lacked the capacity or ability to consult with counsel. Although Petitioner stated that he "did not understand *much* of [the] legal proceedings," this does not mean that Petitioner did not understand the nature and object of the proceedings against him. (Id. at 259) (emphasis added). Based on the foregoing, it was not objectively unreasonable for the state court to reject Petitioner's claim that counsel was ineffective for failing to investigate Petitioner's youth as a partial basis for finding that he was incompetent to stand trial.

The Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's alleged failure to investigate and present evidence of Petitioner's youth was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

4. <u>Failure to Contact and Secure Assistance of Attorney with the Mexican Consulate</u>

Petitioner asserts trial counsel was ineffective for failing to accept legal assistance offered by an attorney with the Mexican Consulate. (ECF No. 1 at 42). Respondent argues that the state court reasonably rejected this claim. (ECF No. 20 at 30). In denying Petitioner's ineffective assistance claim based on trial counsel's failure to accept assistance offered by an attorney with the Mexican Consulate, the Fresno County Superior Court stated:

> Petitioner alleges that his trial attorney was ineffective in not enlisting the help of attorneys from the Fresno office of the Mexican Consulate. Petitioner alleges that these attorneys from the Mexican Consulate, who speak Spanish, could have helped located Spanish-speaking witnesses and otherwise assisted in Petitioner's defense. However, Petitioner fails to explain how investigation by attorneys from the Mexican Consulate would have made a difference in Petitioner's trial. Petitioner has utterly failed to make any factual showing that these attorneys would have performed a better or different investigation than the one which was performed on Petitioner's behalf. Thus, Petitioner has failed to establish that he was prejudiced by his trial's [*sic*] counsel failure to enlist the assistance of the Mexican Consulate.

(ECF No. 20 at 86).

Petitioner does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had contacted and accepted assistance that would have been offered by the attorney with the Mexican Consulate. <u>Strickland</u>, 466 U.S. at 694. The attorney with the Mexican Consulate informed appellate counsel that without payment he could have reached out to undocumented witnesses and told them he would do everything he could to protect them from immigration consequences and inform them of their rights as Mexican nationals. He and his investigator could have assisted with Petitioner's case if trial counsel paid for the investigation. (ECF No. 1 at 124). The record does not establish that defense counsel had access to funds to pay for an investigation by the attorney and investigator from the consulate. Additionally, Petitioner does not allege or otherwise demonstrate what difference assistance from the Mexican Consulate would have made on the defense investigation or the outcome of his trial.

The Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's failure to accept assistance offered by an attorney with the

Mexican Consulate was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

> 5. <u>Failure to Obtain Police Reports and Photographs and Present Favorable Information Found Therein</u>

Petitioner asserts that trial counsel was ineffective for failing to obtain police reports and photographs related to his case from which counsel could have investigated and presented numerous facts that supported Petitioner's defenses. (ECF No. 1 at 42, 44). Petitioner claims that the police reports showed: (1) a statement by the victim's cousin that the victim told her that "some [undocumented Mexican] did it, it was business"; (2) there were recent reports of prostitution involving robbery in the same area; (3) additional details regarding the unknown male whom Petitioner punched; (4) information regarding two men who accompanied the victim and her cousin on the morning of the offense; and (5) additional details regarding Petitioner's wallet and the contents of the victim's purse. (ECF No. 1 at 44–53). Respondent argues that Petitioner fails to show deficient performance and that the state court reasonably concluded that no prejudice resulted. (ECF No. 20 at 32).

In denying Petitioner's ineffective assistance claim based on trial counsel's alleged failure to obtain police reports and photographs and present favorable information found therein, the Fresno County Superior Court stated:

> Petitioner alleges that his trial counsel did not obtain crucial police reports and photos about the incident prior to trial. Petitioner claims that police reports were not obtained that showed: (1) that there were recent reports of prostitution involving robbery in the area where the incident occurred, and (2) that the victim's cousin made a statement which corroborated Petitioner's statement that the victim robbed him of his wallet. Petitioner also objects to his trial counsel's failure to investigate police reports that identified two men who accompanied the victim to the area where the incident occurred. In addition, Petitioner argues that a police report and photos show the victim's purse, with money in it, was found after the incident, which indicates that Petitioner was only retrieving his wallet when he took the victim's purse, and that he

did not intend to permanently deprive the victim of her purse. However, Petitioner cannot demonstrate prejudice as to any of these theories.

Petitioner has made no showing that direct evidence supporting these theories was available for trial. For example, he has not presented a declaration from the victim's cousin stating he would have testified as to the victim's statement (assuming the statement was not inadmissible hearsay). Thus, the existence or nonexistence of these police reports could have no effect on the outcome of the trial.

With regard to the identity of the two men who accompanied the victim to the area where the crime occurred, Petitioner does not identify what facts would have been discovered by interviewing these men. For example, Petitioner does not claim they witnessed the crime. Accordingly, there is no significance to the police report which identified the men.

The photograph of the purse showing the money inside is no different. Even if Petitioner did not intend to permanently deprive the victim of her purse, Petitioner did rob the victim of her cell phone. Petitioner was convicted of only one count of robbery. Therefore, Petitioner was failed to establish that he was prejudiced by his counsel's failure to obtain police reports and photos about the incident prior to trial.

(ECF No. 20 at 86–87).

Petitioner argues that the statement of the victim's cousin was consistent with Petitioner's statement to the police that the victim propositioned Petitioner for sex, took his money without completing the transaction, and robbed him of his wallet. (ECF No. 1 at 44–45). Petitioner also argues that evidence of recent reports of prostitution involving robbery in the same area would have supported Petitioner's statement to police. (Id. at 45). However, Petitioner does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had presented evidence of the cousin's statement and the reports. Strickland, 466 U.S. at 694. There was uncontested testimony at trial that the victim was working as a prostitute and that she had taken Petitioner's money and wallet after propositioning him for sex. (1 RT 108, 147, 158–63, 177–78). As the prosecution's theory of the case did not necessarily contradict Petitioner's version of events, additional evidence supporting Petitioner's version would not have a reasonable probability of changing the outcome of the trial.

///

Petitioner contends trial counsel did not present or attempt to elicit during cross-examination of Detective Cervantes additional details Petitioner told police regarding the man whom Petitioner punched. (ECF No. 1 at 45). Petitioner told police the man's physical appearance and that the man attempted to "swing at" Petitioner. Petitioner stated that the man was a "bulldog," the man barked and two other men came out of an apartment down the street, the men had a bat, and Petitioner believed they knew the victim. Petitioner stated that he knew they would "jump" him, so at that point Petitioner took the victim's purse and ran away. (Id. at 46). Petitioner further contends that police reports included information about two men who accompanied the victim in the morning to the area where the offense occurred. Petitioner argues that further investigation into these men and their role during the incident could have provided critical exculpatory evidence that supported Petitioner's defense. (Id. at 46–47). Petitioner does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had elicited these additional details at trial or further investigated the two men. Strickland, 466 U.S. at 694. There was uncontested testimony at trial that "some unknown male came out and it appeared that he was going to try to swing on [Petitioner], so [Petitioner] punched him in the face." (1 RT 159). According to Petitioner, the men came out after Petitioner had already stabbed the victim. (ECF No. 1 at 46). Petitioner does not claim that the men inserted themselves in the struggle between Petitioner and the victim, and Petitioner does not explain how these additional details or the possibility that the men who earlier accompanied the victim were the ones who attempted to assault him could have altered the outcome of the trial.

Petitioner asserts that the police reports contained additional details regarding Petitioner's wallet and the contents of the victim's purse that would have supported Petitioner's defense. Petitioner argues that trial counsel did not present evidence that the victim mixed items taken out of Petitioner's wallet with the contents of her purse, which would explain why Petitioner took the victim's entire purse instead of just his wallet. (ECF No. 1 at 50). Petitioner also argues that trial counsel did not present evidence that U.S. paper and coined currency was found around the purse, which tends to show that Petitioner did not intend to permanently deprive the victim of her

1  purse when he used force against her. (Id. at 51). Petitioner further argues that trial counsel did

2  not present evidence that police found a wallet at the apartment where Petitioner was staying,

3  which showed that Petitioner actually had a wallet to retrieve. (Id. at 52). Again, Petitioner does

4  not establish "there is a reasonable probability that . . . the result of the proceeding would have

5  been different" if counsel had elicited these additional details at trial. Strickland, 466 U.S. at 694.

6  As the state court correctly noted, even if Petitioner did not intend to permanently deprive the

7  victim of her purse, he did permanently deprive the victim of her cell phone. As Petitioner was

8  convicted of only one count of robbery, Petitioner has failed to demonstrate a reasonable

9  probability that the result of the proceeding would have been different.

10       The Court finds that the state court's decision denying Petitioner's ineffective assistance

11 claim based on trial counsel's failure to investigate and present evidence in the police reports

12 was not contrary to, or an unreasonable application of, clearly established federal law. The

13 decision was not "so lacking in justification that there was an error well understood and

14 comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562

15 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of

16 counsel on this ground.

17       6.   Failure to Investigate and Present Evidence Regarding Petitioner's Size and Injuries

18       Petitioner asserts trial counsel was ineffective for failing to investigate and present

19 evidence regarding his size and injuries at the time of the offense. (ECF No. 1 at 48–51).

20 Respondent argues that the state court reasonably rejected this claim. (ECF No. 20 at 36). In

21 denying Petitioner's ineffective assistance claim based on trial counsel's failure to investigate

22 and present evidence regarding Petitioner's size and injuries, the Fresno County Superior Court

23 stated:

24              Petitioner argues that his trial counsel did not properly investigate
                Petitioner's size at the time of the offense, including reports which
25              indicated that Petitioner was somewhere between 6 and 46 pounds
                lighter than the victim. Further, Petitioner argues that his trial
26              counsel failed to demonstrate that Petitioner had a "red mark" on
                his neck and possible swelling of his right hand after the incident,
27              even though the police had taken photos of Petitioner's neck and
                hand. Petitioner alleges that his trial attorney did not properly
28              investigate the fact that Petitioner's shirt was torn at the collar, and

1

2

> not just stretched at the collar, which, Petitioner argues, shows that more force was used in the struggle with the victim over Petitioner's wallet.

3

4

5

6

7

8

9

> These failures are significant, Petitioner argues, because his size and his injuries at the time of the offense are relevant to whether the force used against the victim was reasonable under the circumstances. However, there is no dispute that a fight occurred between Petitioner and the victim at the time Petitioner stabbed the victim 16 times. The potentially different body size of the victim and Petitioner, the slight injuries sustained by Petitioner in the fight, and the difference between a torn shirt and stretched shirt do not indicate that a different result would have occurred at trial. Thus, Petitioner has failed to establish that his defense was prejudiced as a result of his trial counsel's failure to raise these arguments.

10

(ECF No. 20 at 87–88).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Petitioner argues that trial counsel failed to present favorable evidence from the Fitness Report and Recommendation, which stated Petitioner weighed 110 pounds, and a search warrant, which stated Petitioner weighed 130 to 140 pounds—approximately 16 to 46 pounds less than the victim. (ECF No. 1 at 48–49). Petitioner also argues that trial counsel failed to rebut the trial testimony that Petitioner's shirt was stretched with police reports stating that Petitioner's shirt was torn at the collar, which illustrates the degree of force used by the victim and supported Petitioner's statement that the victim removed his shirt and used force to retain his wallet. (Id. at 50). Petitioner further argues that trial counsel failed to ask detectives at trial to describe the photographs they took of Petitioner, which showed a red mark on the back of his neck and possible swelling to his right hand. (Id. at 51). Petitioner does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had presented this evidence at trial. Strickland, 466 U.S. at 694. Petitioner was armed with a switchblade, the victim did not possess a weapon, and the victim did not have any defensive wounds on her hands. (1 RT 139–40, 163, 167, 230–31). There was uncontested testimony at trial that the victim had sixteen stab and puncture wounds. (1 RT 212). Given that the victim was not armed and the high number of wounds sustained, the state court reasonably determined that there is not a reasonable probability that the jury would have come to a different conclusion if defense counsel had presented evidence regarding the size difference between Petitioner and the

1   victim, the torn shirt collar, the red mark on Petitioner's neck, and Petitioner's swollen hand.

2          The Court finds that the state court's decision denying Petitioner's ineffective assistance

3   claim based on trial counsel's alleged failure to investigate and present evidence regarding

4   Petitioner's size and injuries was not contrary to, or an unreasonable application of, clearly

5   established federal law. The decision was not "so lacking in justification that there was an error

6   well understood and comprehended in existing law beyond any possibility for fairminded

7   disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief

8   for ineffective assistance of counsel on this ground.

9          7.   Failure to Identify and Locate Witnesses

10          Petitioner asserts trial counsel was ineffective for failing to identify and locate witnesses.

11   (ECF No. 1 at 52–53). Respondent argues that the state court reasonably rejected Petitioner's

12   claim. (ECF No. 20 at 38). In denying Petitioner's ineffective assistance claim based on trial

13   counsel's failure to identify and locate witnesses, the Fresno County Superior Court stated:

> Petitioner alleges that his trial counsel was not diligent in following up on identifying witnesses to the incident. Petitioner alleges that he told detectives that there were witnesses to the incident. Petitioner also states that he and a friend told his trial attorney that there were witnesses to the incident and people who were with Petitioner, drinking, prior to the incident, including a witness named "Maracas." However, Petitioner fails to indicate how the information from the witnesses would have affected the result of his trial. He must be able to show that the witnesses were: 1) available and 2) had relevant information that would have changed the outcome of his trial. Petitioner does not state what information the witnesses would have provided and whether they would have testified at trial. Thus, Petitioner has failed to establish that his defense was prejudiced as a result of his trial counsel's failure to investigate witnesses to the incident.

22   (ECF No. 20 at 88–89). "Because the state court did not decide whether . . . counsel was

23   deficient, [the Court] review[s] this element of [the] Strickland claim de novo." Porter v.

24   McCollum, 558 U.S. 30, 39 (2009) (citing Rompilla v. Beard, 545 U.S. 374, 390 (2005)).

25          Petitioner contends that he and a close friend informed counsel that people had witnessed

26   the offense and informed counsel where one of the witnesses, nicknamed "Maracas," lived. (ECF

27   No. 1 at 52–53). Petitioner argues that trial counsel was ineffective for failing to use available

28   investigators and instead attempting to locate "Maracas" himself. Trial counsel indicated to

appellate counsel that he did not use available investigators at the Fresno Alternate Defense Office because they did not speak Spanish and the potential witnesses did not speak English. (Id. at 117). There is nothing in the record regarding defense counsel's ability to speak Spanish, but it can be inferred that defense counsel had some way to communicate to Spanish speakers because he attempted to locate witnesses on his own rather than utilize non-Spanish-speaking investigators. In an attempt to locate the potential witness, trial counsel went at least three times to the apartment where the potential witness lived and where twenty to thirty "immigrant workers were coming and going." (ECF No. 1 at 117–18). Trial counsel's action was not "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

Petitioner also faults trial counsel for not looking for "Maracas" until April 30, 2011, two days before the trial and for not attempting to subpoena possible witnesses to the crime. (Id. at 52). Contrary to Petitioner's assertions, trial counsel attempted to look for "Maracas" prior to April 30, 2011. At a hearing on April 28, 2011, defense counsel informed the court, "There's an issue that's been ongoing as to potential witness to the actual incident and I've been trying to locate that person." (RT 3, Apr. 28, 2011). Defense counsel stated his intention to "continue [his] efforts," but noted that he didn't have "a name of a person or . . . anything concrete." (Id.). The prosecutor confirmed defense counsel's "repeated efforts to try to find unnamed unidentified person or persons and with no success." (Id.). Petitioner has failed to demonstrate that trial counsel was deficient in his efforts to identify and locate potential witnesses.

After the trial, Petitioner learned that "Maracas" did not witness the incident, but allegedly had information about the people who did. (ECF No. 1 at 53, 260). Petitioner fails to show that counsel's failure to locate "Maracas" or witnesses to the offense prejudiced his defense. Petitioner did not provide any affidavits from "Maracas" or the alleged witnesses to the offense to the state courts or provide any information about the nature of their purported testimony. See Andrews v. Davis, 798 F.3d 759, 792 (9th Cir. 2015). Petitioner does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

///

1   The Court finds that the state court's decision denying Petitioner's ineffective assistance

2   claim based on trial counsel's alleged failure to identify and locate witnesses was not contrary to,

3   or an unreasonable application of, clearly established federal law. The decision was not "so

4   lacking in justification that there was an error well understood and comprehended in existing law

5   beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly,

6   Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

7       8.  <u>Failure to Further Investigate Victim's Intoxication</u>

8   Petitioner asserts trial counsel was ineffective for failing to further investigate the

9   victim's intoxication at the time of the offense. (ECF No. 1 at 48). Petitioner contends that more

10  evidence regarding how much methamphetamine the victim ingested before the offense and how

11  the methamphetamine affected her would have strengthened Petitioner's defense that the victim

12  used a great amount of force against him. (<u>Id.</u>). Respondent argues that counsel's performance

13  was not deficient and that the state court reasonably concluded that there was no prejudice. (ECF

14  No. 20 at 41–43). In denying Petitioner's ineffective assistance claim based on trial counsel's

15  failure to further investigate the victim's intoxication at the time of the offense, the Fresno

16  County Superior Court stated:

17
18  > Petitioner objects to his trial counsel's failure to more strongly
    > argue that the victim drank alcohol and smoked marijuana and
    > methamphetamine prior to the incident. Petitioner argues that this
19  > is significant because, as was elicited during Petitioner's cross
    > examination of the pathologist, methamphetamine levels increase
    > levels of strength and aggressiveness. However, Petitioner admits
20  > that his trial counsel did elicit the fact of the victim's potential
    > intoxication, and its effect on the victim, during cross examination,
21  > and Petitioner was still conviction of first degree murder. Thus, the
    > jury rejected any defense of imperfect or perfect self-defense.
22  > Accordingly, Petitioner has failed to establish that his defense was
    > prejudiced as a result of his trial counsel's failure to argue more
23  > forcefully about the victim's potential intoxication.

24  (ECF No. 20 at 89).

25  Petitioner does not establish "there is a reasonable probability that . . . the result of the

26  proceeding would have been different" if counsel had further investigated and presented more

27  evidence regarding the victim's intoxication. <u>Strickland</u>, 466 U.S. at 694. On cross-examination,

28  the pathologist testified that methamphetamine "can have an excitable effect on an individual,"

can be associated with increased aggressiveness, can cause increased levels of adrenaline, which in turn have been associated with increased levels of strength. (1 RT 224). Petitioner does not present any evidence to support his assumption that more information regarding when and how much methamphetamine the victim ingested before the offense and how the methamphetamine affected her would have strengthened Petitioner's defense that the victim used a great amount of force against him. There was the possibility that more information could have undermined Petitioner's defense if the victim ingested a quantity that had a negligible effect on her strength and aggressiveness. Further, there was uncontested testimony at trial that the victim was unarmed and had sixteen stab and puncture wounds. (1 RT 167, 212). Given the high number of wounds sustained and the fact that the pathologist testified in general terms about methamphetamine being associated with increased adrenaline, strength, and aggressiveness, the state court reasonably determined that there is not a reasonable probability that the jury would have come to a different conclusion if defense counsel had presented more specific evidence regarding how much methamphetamine the victim ingested and its effect on the victim's strength and use of force.

The Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's failure to further investigate and present more evidence regarding the victim's intoxication was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

9. Failure to Request Continuance of Trial Date

Petitioner asserts that trial counsel was ineffective for failing to request a continuance of the trial date despite being overloaded with cases and not adequately prepared for trial. (ECF No. 1 at 42). Respondent argues that counsel was not deficient and that the state court reasonably concluded that no prejudice resulted. (ECF No. 20 at 45). In denying Petitioner's ineffective assistance claim based on trial counsel's failure to request a continuance, the Fresno County

1 Superior Court stated:

> Petitioner alleges that his trial counsel failed to ask for a continuance of the trial date. However, while Petitioner reports that his attorney admitted he was not ready for trial and was still looking for witnesses when Petitioner's trial commenced, Petitioner fails to show, specifically, how his trial attorney's failure to ask for a continuance prejudice his defense. As set forth above, Petitioner cannot state with any certainty what these supposed witnesses would have testified to. Accordingly, Petitioner has failed to establish that his defense was prejudiced as a result of his trial counsel's failure to ask for a continuance.

8 (ECF No. 20 at 90).

9  Trial counsel was given a large amount of discovery at the last minute, and counsel had

10 not located any potential witnesses. (ECF No. 1 at 117; RT 3, Apr. 28, 2011). Although trial

11 counsel was not adequately prepared for trial in Petitioner's case, counsel informed the

12 prosecutor that he was ready. (ECF No. 1 at 117). As discussed in sections IV(A)(5) and

13 IV(A)(7), *supra*, trial counsel's failure to investigate and present favorable evidence in the police

14 reports and failure to locate potential witnesses did not prejudice Petitioner. Thus, the state court

15 reasonably determined that Petitioner failed to demonstrate that he was prejudiced by trial

16 counsel's failure to request a continuance due to last-minute discovery and inability to locate

17 potential witnesses.

18  The Court finds that the state court's decision denying Petitioner's ineffective assistance

19 claim based on trial counsel's failure to request a continuance was not contrary to, or an

20 unreasonable application of, clearly established federal law. The decision was not "so lacking in

21 justification that there was an error well understood and comprehended in existing law beyond

22 any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is

23 not entitled to habeas relief for ineffective assistance of counsel on this ground.

24  10. Failure to Adequately Research and Present Legal Basis for Instructions on Defense
    Theory

26  Petitioner asserts trial counsel was ineffective for failing to adequately research the legal

27 basis of the defense's theory of justifiable homicide, which resulted in the trial court not giving

28 the appropriate instructions. (ECF No. 1 at 54–63). Respondent argues that counsel was not

deficient and that counsel's omission was not prejudicial. (ECF No. 20 at 48–53). In denying

Petitioner's ineffective assistance claim based on trial counsel's failure to adequately research

the legal basis for the defense instructions, the Fresno County Superior Court stated:

> Petitioner alleges that his trial attorney failed to research the legal bases for Petitioner's defenses. Specifically, Petitioner alleges that his attorney failed to properly argue to the trial court that jury instructions, namely CALCRIM No. 3476 and CALCRIM No. 505 pertaining to self-defense, should have been given to the jury. However, Petitioner argues, using the trial record, that these instructions should have been given to the jury. The record indicates that there was argument during the trial over providing the jury with CALCRIM No. 3476, and that an unmodified version of CALCRIM Nos. 505 and 571 were given to the jury as instructions. (*See* Fresno County Superior Case No. F11900271.) Since these matters are in the record, Petitioner could have raised these arguments on appeal. Consequently, Petitioner does not demonstrate an exception to the general rule that a court will dismiss a habeas argument if Petitioner alleges an issue that could have been, but was not, raised on direct appeal. (*In re Dixon* (1953) 41 Cal.2d 756, 759; see *In re Harris* (1993) 5 Cal.4th 813, 829.)

(LD 10 at 8).

### a.  Applicable Standard of Review

Respondent acknowledges that the <u>Dixon</u> procedural bar does not apply to claims of

ineffective assistance of counsel and that the Fresno County Superior Court erroneously declined

to consider the merits of this claim. (ECF No. 20 at 46). However, Respondent argues that

AEDPA deference still applies. In his state habeas petition before the California Supreme Court,

Petitioner expressly argued that the Fresno County Superior Court erroneously imposed the

<u>Dixon</u> bar on this claim. Although the California Supreme Court summarily denied the petition,

Respondent contends that the <u>Ylst</u> "look through" presumption does not apply because "[i]t is

inconceivable that the California Supreme Court misapplied <u>Dixon</u>'s long-standing rule of state

procedure to overlook Petitioner's ineffectiveness claim." (ECF No. 20 at 47). The Court need

not determine whether AEDPA deference applies because the Court finds that even under *de

novo* review, the claim fails.

### b.  Analysis

On direct appeal, the California Court of Appeal addressed whether the trial court erred

1    in failing to instruct *sua sponte* that a homicide may be justified when a robbery victim uses

2    reasonable force to recover stolen property. The California Court of Appeal stated:

> 3    The victim of a robbery "has a right to use reasonable force to
> recover his [property] and, if actually or apparently reasonably
> 4    necessary, to kill the robber in so doing. But when the point of
> reasonable force is passed, justification ceases [citation]." (*People
> 5    v. Young* (1963) 214 Cal.App.2d 641, 648 (*Young*) [where
> "defendant's money was snatched from his hand so quickly that no
> 6    particular force was required and no fear engendered upon the
> instant, but mere demand for return of the money brought forth the
> 7    opened knife and the threat to cut defendant's head off and he was
> in fear for his life"]; *People v. Randle* (2005) 35 Cal.4th 987,
> 8    1002–1003 & fn. 6 (*Randle*) [citing *Young* and recognizing right to
> pursue and use reasonable force to retrieve stolen property],
> 9    disapproved on other grounds in *People v. Chun* (2009) 45 Cal.4th
> 1172, 1201.)
> 10
>      Here, Marcella took defendant's wallet without force or fear, or
> 11   even his knowledge. But when defendant discovered the loss and
> confronted her, demanding return of his wallet, she used force to
> 12   physically resist his recovery of his stolen wallet. We believe at
> this point Marcella's mere theft of the wallet became a robbery and
> 13   defendant was entitled to use *reasonable* force to recover his
> property. (*Pham, supra,* 15 Cal.App.4th at pp. 65–67; *Young,*
> 14   *supra,* 214 Cal.App.2d at p. 648; *Randle, supra,* 35 Cal.4th at pp.
> 1002–1003 & fn. 6.)
> 15
>      There was no evidence that defendant used *reasonable* rather than
> 16   excessive force when he stabbed Marcella, who was apparently
> unarmed, *16 times,* many of them to the torso, with a switchblade
> 17   to recover his stolen wallet. (See *Randle, supra,* 35 Cal.4th at p.
> 1003 [the beating went well beyond any force the victims were
> 18   entitled to use to recover their property].) Thus, we find the trial
> court had no sua sponte duty to give the instruction. Assuming,
> 19   without deciding, that the trial court was required to instruct on this
> defense theory, we are confident the jury would not have found
> 20   defendant's use of force to be reasonable and therefore conclude
> any error in failing to give the instruction was harmless beyond a
> 21   reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

22   <u>Trinidad</u>, 2013 WL 2279434, at *5. The California Court of Appeal's holding that Petitioner was

23   entitled to use reasonable force to recover his wallet is binding on this Court. <u>See Bradshaw v.</u>

24   <u>Richey</u>, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one

25   announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

26   corpus.").

27        "[A] court need not determine whether counsel's performance was deficient before

28   examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it

is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697. Petitioner does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had adequately researched the legal basis for Petitioner's preferred instructions. Id. at 694. The California Court of Appeal found that Petitioner was entitled to use *reasonable* force to recover his wallet from the victim. Had the jury been so instructed, there is not a reasonable probability that the result of the proceeding would have been different. As discussed in section IV(A)(6), *supra*, Petitioner was armed with a switchblade, the victim had no weapon, and there was uncontested testimony at trial that the victim had sixteen stab and puncture wounds. (1 RT 212). Given that the victim was not armed and the high number of wounds sustained, the Court finds that the jury would not have found that Petitioner used *reasonable* force in recovering his wallet from the victim.

Similarly, there is not a reasonable probability that the result of the proceeding would have been different had the jury been instructed with a version of CALCRIM No. 505 that a homicide is justifiable if: (1) the defendant reasonably believed that he was in imminent danger of being killed or suffering great bodily injury *or was in imminent danger of being robbed*; (2) the defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger; and (3) the defendant used no more force than was reasonably necessary to defend against that danger. Again, given that the victim was not armed and the high number of wounds sustained, the Court finds that the jury would not have found that Petitioner used no more force than was reasonably necessary to defend against the danger of being robbed.

Petitioner also argues that competent counsel would have requested a modification to the imperfect self-defense instruction to reflect that Petitioner "could have been found guilty of voluntary manslaughter if he actually but unreasonably believed that deadly force was necessary to prevent Ms. Ramos from robbing him." (ECF No. 1 at 62). However, the cases to which Petitioner cites do not support Petitioner's modification that imperfect self-defense is available when a defendant actually believed that he was in imminent danger of being the victim of a

///

robbery.[6] Petitioner does not provide authority that directly supports such a modification and fails to demonstrate that the trial court would have granted such a modification. Thus, Petitioner does not establish there is a reasonable probability that the result of the proceeding would have been different if defense counsel had requested a modification of the imperfect self-defense instruction.

Based on the foregoing, the Court finds that Petitioner is not entitled to habeas relief for ineffective assistance of counsel based on trial counsel's failure to adequately research and present the legal basis of the defense's theory of justifiable homicide and Petitioner's preferred instructions.

11. Trial Counsel's Possible Drug Use While Representing Petitioner

Petitioner asserts trial counsel may have been using drugs at the time of Petitioner's trial based on counsel's subsequent conviction for possession of a controlled substance and six-month suspension from practicing law. (ECF No. 1 at 53). Respondent argues that Petitioner's own exhibit demonstrates that trial counsel was not impaired by drug use while representing Petitioner and that the state court's finding that Petitioner did not suffer prejudice was not unreasonable or contrary to Supreme Court precedent. (ECF No. 20 at 43–44). In denying Petitioner's ineffective assistance claim based on trial counsel's alleged drug use during Petitioner's trial, the Fresno County Superior Court stated:

> Petitioner argues that his trial attorney may have used drugs during the time of Petitioner's trial. Petitioner argues that his attorney was convicted on September 17, 2012 of possessing a controlled substance (a violation of Health and Safety Code section 11377, subdivision (a)), and his trial attorney has at least one pending charge before the State Bar of California for failure to perform with competence. (Exhibits N and P to petition.) Petitioner states that there is a "strong possibility" that any drug use by Petitioner's trial attorney during his representation of Petitioner would have

---

[6] In re Christian S. recognized the continuing validity of the imperfect self-defense doctrine, which is defined as an "*honest but unreasonable* belief that it is necessary to defend oneself from imminent peril to *life or great bodily injury*," and discussed its common law and statutory roots. 7 Cal. 4th 768, 773–74, 783 (1994) (first emphasis in original) (quoting People v. Flannel, 25 Cal. 3d 668, 674 (1979)). In People v. Vasquez, the defendant confronted the victim with accusations of rape. The victim lunged forward and began to choke the defendant, who then pulled out a gun and repeatedly shot the victim. 136 Cal. App. 4th 1176, 1178 (Cal. Ct. App. 2006). The court held imperfect self-defense was available because (1) it was for the jury to decide whether the defendant actually feared *serious injury or death* from being choked, and (2) even though the defendant set in motion the chain of events that led the victim to attack the defendant, the victim's use of force against the defendant was unlawful. Id. at 1178–80.

> negatively impacted his performance in investigating, researching and presenting Petitioner's case. However, even if Petitioner's attorney used drugs during the trial, Petitioner does not indicate how the outcome of this trial would have been different. He is unable to point to any part of the record which demonstrates impairment or disability. Thus, Petitioner has failed to establish that his defense was prejudiced as a result of his trial counsel's alleged drug use.

(ECF No. 20 at 89–90).

Petitioner has failed to establish that trial counsel was in fact using drugs at the time he represented Petitioner. Appellate counsel's declaration provides:

> [Trial counsel] stated that he was not using drugs when he represented Mr. Trinidad at trial, but thought he was using drugs during the time period that we last spoke. He indicated that he was not as sharp as he should have been during our discussions and did not remember the details.

(ECF No. 1 at 122). Even assuming trial counsel used drugs during his representation of Petitioner, "drug use is not relevant in and of itself" to an ineffective assistance claim. Bonin v. Calderon, 59 F.3d 815, 838 (9th Cir. 1995). The relevant inquiry is whether counsel's performance was deficient and caused prejudice. Id. (citing Berry v. King, 765 F.2d 451, 454 (5th Cir.1985)). Petitioner argues that "[t]here is a strong possibility that any drug use by Mr. Martin during his representation of Mr. Trinidad would have negatively impacted his performance in investigating, researching, and presenting Mr. Trinidad's case." (ECF No. 1 at 54). As discussed above, Petitioner has not demonstrated prejudice as to the other grounds of ineffective assistance regarding trial counsel's allegedly deficient investigation, research, and defense presentation. Further, Petitioner fails to specify additional deficient acts or omissions that may have resulted from counsel's alleged drug use and how that prejudiced his defense.

The Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's alleged drug use was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

1    12. Cumulative Deficiencies

2    Petitioner asserts that based on all of trial counsel's multiple deficiencies, "it is

3    reasonably probable that [Petitioner] would have been convicted of something less than first

4    degree murder and robbery." (ECF No. 1 at 64). Respondent argues that the state court's

5    rejection of this claim was not unreasonable or contrary to Supreme Court precedent. (ECF No.

6    20 at 54). In denying Petitioner's ineffective assistance claim based on trial counsel's cumulative

7    deficiencies, the Fresno County Superior Court stated:

8    
9    

10    

11    

12    

13    

14    
> Petitioner argues that all these deficiencies, taken together, show that there is a reasonable probability that Petitioner would have been convicted of something less than first degree murder and robbery if his trial counsel had not provided ineffective assistance. However, the Court finds that, even assuming that Petitioner's former counsel failed to act with the required level of competence, Petitioner has failed to present facts demonstrating that there is a reasonable probability that if Petitioner's former counsel had adequately done everything Petitioner alleges should have been done, there would have been a different outcome. Thus, Petitioner has failed to establish that his defense was prejudiced as a result of his trial counsel's many deficiencies.

15    (ECF No. 20 at 90–91).

16    Although "prejudice may result from the cumulative impact of [counsel's] multiple

17    deficiencies," as discussed above, Petitioner has not demonstrated prejudice as to the individual

18    grounds of ineffective assistance of counsel. Woods, 764 F.3d at 1139 (internal quotation marks

19    omitted) (quoting Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc)). "[T]he

20    Sixth Amendment does not guarantee the right to perfect counsel," Titlow, 134 S. Ct. at 18, and

21    trial counsel's performance did not render Petitioner's trial fundamentally unfair. The Court

22    finds that the state court's decision denying Petitioner's ineffective assistance claim based on

23    trial counsel's cumulative deficiencies was not contrary to, or an unreasonable application of,

24    clearly established federal law. The decision was not "so lacking in justification that there was an

25    error well understood and comprehended in existing law beyond any possibility for fairminded

26    disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief

27    for ineffective assistance of counsel on this ground.

28    ///

1    13. Plea Process

2         Petitioner asserts trial counsel provided ineffective assistance during the plea process

3    because counsel advised Petitioner without conducting an adequate investigation or researching

4    the applicable law and counsel failed to fully explain the plea offer. (ECF No. 1 at 67). Petitioner

5    claims that he relied on counsel's advice in deciding to reject the plea offer and would have

6    accepted the offer had Petitioner been properly advised of his chances of success at trial and had

7    he known counsel had not adequately investigated, researched, and prepared his case. (Id.).

8    Respondent argues that habeas relief is foreclosed for this claim because the state court

9    adjudication was not unreasonable or contrary to Supreme Court precedent. (ECF No. 20 at 55).

10        In denying Petitioner's ineffective assistance claim based on trial counsel's advice on the

11   prosecution's plea offer, the Fresno County Superior Court stated:

> Petitioner alleges that his trial counsel was ineffective in not
> properly investigating Petitioner's case prior to advising Petitioner
> that he, Petitioner, "had a chance" at trial, which caused Petitioner
> to reject the plea deal offered by the prosecution. (Petition at 42.)
> The prosecution offered a plea deal of second degree murder and a
> sentence of 15 years to life to Petitioner. Although Petitioner
> admits he was advised of a possible sentence of 31 years to life if
> he was convicted of all charges, Petitioner rejected the plea deal
> and was ultimately convicted at a jury trial of first degree murder
> with an enhancement of personal use of a knife. (Ibid.) He was
> sentenced to 25 years to life imprisonment. (Ibid.) Petitioner
> alleges that, had he known the true odds of success at trial, he
> would have accepted the prosecution's plea deal and would not
> have gone to trial. (Id. at 32.) Petitioner also alleges that he would
> not have gone to trial if he had known that Petitioner's attorney
> had not adequately prepared and investigated Petitioner's case for
> trial. (Ibid.) In support of his argument, Petitioner cites Lafler v.
> Cooper (2012) 566 U.S. ___ [132 S.Ct. 1376, 1384], and In re
> Alvernaz (1992) 2 Cal.4th 924, 928, 933-936.
>
> However, Petitioner provides no evidence that the reason he did
> not take the plea deal is more than "buyer's remorse." Petitioner
> claims that his trial attorney told him that he "had a chance" at
> trial. (Petitioner at 42; Exhibits A and M to petition.) However,
> Petitioner has not demonstrated that a reasonable attorney would
> have evaluated Petitioner's case in a different manner. Indeed,
> such an equivocal statement -- that a defendant "has a chance" at
> trial -- does not indicate that Petitioner's attorney was objectively
> unreasonable in his representation of Petitioner. Specifically,
> Petitioner provides no evidence that his attorney actually
> convinced Petitioner to reject the plea deal (see Lafler, supra, 132
> S.Ct. at 1383), or that Petitioner was misadvised by his trial
> counsel as to the possible maximum imprisonment Petitioner faced

if he was convicted of the charges (see *Alvernaz, supra*, 2 Cal.4th 930-931, 936).

Further, Petitioner does not indicate what any additional investigation by his trial counsel would have established. Thus, even if Petitioner's attorney was objectively unreasonable in not conducting further investigation prior to telling Petitioner that he "had a chance" at trial, Petitioner has not demonstrated that additional investigation would have changed the outcome of his trial. Therefore, Petitioner has failed to establish that he was prejudiced by his counsel's alleged failure to investigate further prior to his representation of Petitioner regarding the plea deal.

(ECF No. 20 at 91–93).

### a. Applicable Standard of Review

"When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953 (2007). <u>See also</u> <u>Liao v. Junious</u>, 817 F.3d 678, 688 (9th Cir. 2016) ("Only if a petitioner can survive this threshold review as to claims previously rejected on their merits by a state court is a federal court permitted to reach the merits of a petitioner's claims, reviewing them *de novo*."). A state court's decision involves an unreasonable application of clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Williams</u>, 529 U.S. at 407.

The Supreme Court has applied the <u>Strickland</u> analysis to ineffective assistance claims arising from the plea process. <u>See</u> <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1384 (2012); <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985). Here, the Fresno County Superior Court correctly identified <u>Lafler</u> as governing Supreme Court precedent. In <u>Lafler</u>, the Supreme Court addressed the situation where ineffective advice led to the rejection of a plea offer and held:

In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less

1          severe than under the judgment and sentence that in fact were
2          imposed.

3   *Lafler*, 132 S. Ct. at 1385. In its prejudice analysis, the Fresno County Superior Court stated that

4   "Petitioner has not demonstrated that additional investigation would have changed *the outcome*

5   *of his trial*. Therefore, Petitioner has failed to establish that he was prejudiced by his counsel's

6   alleged failure to investigate further prior to his representation of Petitioner regarding the plea

7   deal." (ECF No. 20 at 93) (emphasis added). However, "[i]n the context of pleas a defendant

8   must show the outcome of the *plea process* would have been different with competent advice."

9   *Lafler*, 132 S. Ct. at 1384 (emphasis added). Based on the foregoing, the Court finds that the

10  state court unreasonably applied clearly established federal law. Accordingly, the Court will

11  review this claim *de novo*. See *Panetti*, 551 U.S. at 953; *Liao*, 817 F.3d at 688.

12          **b.  Analysis**

13          Prior to trial, the prosecution extended Petitioner a plea offer of second-degree murder

14  with a sentence of fifteen years to life. (RT 1, Apr. 28, 2011). Both parties agreed that

15  Petitioner's sentencing exposure was thirty-one years to life. Petitioner confirmed to the trial

16  court that he understood the offer that was made and his sentencing exposure. Petitioner decided

17  to proceed to trial. (Id. at 2–3). Petitioner declares that he rejected the plea offer based on the

18  advice of his trial attorney, who told Petitioner that he "had a chance at trial." (ECF No. 1 at

19  260). Trial counsel informed appellate counsel that "he may not have fully explained the

20  prosecution's plea bargain offer to Mr. Trinidad and he regrets not explaining Mr. Trinidad's

21  odds of succeeding at trial." (Id. at 117).

22          The Ninth Circuit has stated that in "ineffectiveness of counsel in plea situations . . . the

23  question [is] not whether 'counsel's advice [was] right or wrong, but . . . whether that advice was

24  within the range of competence demanded of attorneys in criminal cases.'" *Turner v. Calderon*,

25  281 F.3d 851, 880 (9th Cir. 2002) (second alteration in original) (quoting *McMann v.*

26  *Richardson*, 397 U.S. 759, 771 (1970)). *Turner* held that to establish a claim of ineffective

27  assistance of counsel in plea situations, a defendant "must demonstrate gross error on the part of

28  counsel." 281 F.3d at 880 (internal quotation marks omitted) (quoting *McMann*, 397 U.S. at

772). Here, although trial counsel stated that he may not have fully explained the offer to Petitioner, the record establishes that Petitioner was aware of the sentencing terms of the prosecution's offer and his sentencing exposure if he were to be found guilty at trial. (RT 2–3, Apr. 28, 2011). Additionally, there is nothing in the record that suggests trial counsel failed to accurately convey the correct plea offer. See Nunes v. Mueller, 350 F.3d 1045, 1056 (9th Cir. 2003) (holding that counsel's failure to convey the correct plea bargain and resulting prejudice entitled petitioner to habeas relief for ineffective assistance of counsel).

With respect to trial counsel telling Petitioner that he "had a chance at trial," Petitioner does not establish that such advice was outside the "wide range" of reasonable professional assistance, Strickland, 466 U.S. at 687, or constituted "gross error on the part of counsel," Turner, 281 F.3d at 880 (citation omitted). The Ninth Circuit has held that although "a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome . . . combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys." Womack v. Del Papa, 497 F.3d 998, 1003 (9th Cir. 2007) (internal quotation marks omitted) (quoting Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986)). See Lafler, 132 S. Ct. at 1391 ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."). Although it was uncontested that Petitioner stabbed the victim, the case presented some potential mitigating factors. For example, Petitioner was just fifteen years old at the time of the offense, the victim had taken Petitioner's money and wallet prior to the altercation, and the victim had controlled substances in her system. Thus, trial counsel's equivocal statement that Petitioner "had a chance at trial" was not necessarily a gross mischaracterization of the likely outcome. Further, Petitioner has not alleged that trial counsel misinformed Petitioner of the possible effects of going to trial.

"Counsel cannot be required to accurately predict what the jury or court might find . . . ." Turner, 281 F.3d at 881. Although the decision to proceed to trial resulted in an unfavorable verdict for Petitioner, "counsel was not constitutionally defective because he lacked a crystal ball." Id. Based on the foregoing, the Court finds that Petitioner has failed to demonstrate gross

error on the part of counsel and thus, counsel's performance was not deficient. See id. at 880. As Petitioner cannot satisfy the first Strickland prong, Petitioner is not entitled to habeas relief for ineffective assistance of counsel with respect to trial counsel's advice regarding the plea offer.

### B.  Failure to Appoint of Counsel

In his third claim for relief, Petitioner asserts that California's failure to appoint him counsel to investigate and present an ineffective assistance of trial counsel claim in habeas proceedings violates his constitutional right to counsel. (ECF No. 1 at 8, 69). Respondent argues that the state court's adjudication was not contrary to, or an unreasonable application of, controlling Supreme Court precedent. (ECF No. 20 at 59).

This claim was first raised in Petitioner's state habeas petition in the California Supreme Court. The California Supreme Court summarily denied the petition. (LD 16). The Court presumes that the California Supreme Court adjudicated the claim on the merits. See Richter, 562 U.S. at 99. Generally, federal courts "look through" summary denials and review the last reasoned state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806. Here, however, there is no reasoned opinion. Accordingly, the Court must review the state court record and "determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

The Court finds that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. The Supreme Court has recognized that there is no constitutional right to counsel in state collateral proceedings. Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012) (acknowledging "the constitutional rule that there is no right to counsel in collateral proceedings"); Coleman v. Thompson, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review.").[7]

---

[7] In Martinez, the Supreme Court noted that Coleman left open the constitutional question of "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance of counsel." Martinez, 132 S. Ct. at 1315. However, Martinez did not resolve that question, and it is not clear that such an exception to the rule would apply in the instant case.

1   The state court's denial was not "so lacking in justification that there was an error well
2   understood and comprehended in existing law beyond any possibility for fairminded
3   disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief
4   on his third claim for relief, and it must be denied.

5       **C. Self-Defense**

6       In his fourth claim for relief, Petitioner asserts that with respect to the offenses at issue in
7   the instant petition, he acted in self-defense. (ECF No. 1 at 10). Respondent contends that this
8   claim is unexhausted and not cognizable in a federal habeas proceeding. (ECF No. 20 at 63).
9   Respondent argues that even generously construing the claim to allege ineffective assistance of
10  counsel, counsel's performance was neither deficient nor prejudicial. (Id. at 64). Petitioner has
11  not raised this claim on direct appeal or in his state habeas petitions, which raises a potential
12  exhaustion bar.[8] However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an
13  unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise
14  even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting
15  the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

16      The Court "must construe *pro se* habeas filings liberally." Allen v. Calderon, 408 F.3d
17  1150, 1153 (9th Cir. 2005) (citing Maleng v. Cook, 490 U.S. 488 (1989)). To the extent
18  Petitioner challenges the jury's rejection of his self-defense claim, that is an issue of state law not
19  cognizable in federal habeas proceedings. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per
20  curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment
21  susceptible to collateral attack in the federal courts."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990)
22  ("[F]ederal habeas corpus relief does not lie for errors of state law."); Barefoot v. Estelle, 463
23  U.S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials.").

24  ---
[8] A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial
25  remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state
    court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v.
26  Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270,
    276 (1971). To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the
27  claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the
    petitioner to relief." Duncan, 513 U.S. at 365; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "Fair presentation
    requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on
28  which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the
    facts bearing upon his constitutional claim.'" Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) (citation omitted).

To the extent Petitioner asserts ineffective assistance of counsel, the Court finds that counsel's performance was neither deficient nor prejudicial. Petitioner raises the fact that trial counsel did not put into evidence photographs detectives took of Petitioner that showed red marks on his neck from the altercation with the victim, which supported his claim that the victim had her legs wrapped around his neck and was choking him during their altercation. (ECF No. 1 at 10). Although trial counsel did not introduce the photographs, counsel did raise Petitioner's theory of self-defense as a hypothetical during cross-examination of the pathologist:

> [DEFENSE COUNSEL]: Q. And you mentioned two stab wounds on the legs. So kind of along those same lines, if a person was on their back and had some—their legs wrapped around somebody's neck, were the stab wounds that you found on Ms. Ramos consistent with the person who is being choked in that manner stabbing?
>
> . . .
>
> THE WITNESS: The stab wound to the front of the lower left leg and the outer left leg were the type of stab wounds that could possibly occur in the scenario in which an individual's legs were raised. Whether they occurred in that position, it really depends upon some other dynamics that I would have to know about. But at least the individual's legs were raised up.

(1 RT 228–29). Further, counsel also mentioned Petitioner's theory of self-defense during closing argument, stating:

> I asked Dr. Chambliss if it was consistent, if the injuries to the legs were consistent with the person having their legs wrapped around somebody's neck in a choke hold. He did not answer that question. But what he did say was they're consistent with somebody having their legs up in the air.

(2 RT 341). Therefore, counsel was not deficient because he raised at trial, through the limited means available, Petitioner's claim that the victim had her legs wrapped around Petitioner's neck and was choking him. Moreover, as discussed in section IV(A)(6), *supra*, trial counsel's failure to introduce photographs of the red marks on Petitioner's neck did not prejudice Petitioner because there is not a reasonable probability that the jury would have come to a different conclusion given that the victim was not armed and the high number of wounds sustained.

As it is "perfectly clear" that Petitioner does not raise a colorable ineffective assistance claim with respect to trial counsel's alleged failure to argue that Petitioner acted in self-defense

when the victim had her legs wrapped around his neck and was choking him during their altercation, the Court may deny Petitioner's unexhausted fourth claim for relief on the merits under 28 U.S.C. § 2254(b)(2).

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 20, 2016**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE